UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LOUIS A. CUTRE, JR.,

                              Plaintiff,

v.

                              Case # 17-CV-135-FPG

NANCY A. BERRYHILL, ACTING
COMMISSIONER SOCIAL SECURITY,

                              DECISION AND ORDER

                              Defendant.

## INTRODUCTION

Louis A. Cutre, Jr. brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 12. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On April 2, 2013, Cutre protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 154-61. He alleged disability since February 1, 2011 due to lower back pain, bulging discs in his neck, mental retardation, and anxiety. Tr. 185. On June 12, 2015, Cutre and a vocational expert ("VE") appeared testified at a hearing before Administrative

---

[1] References to "Tr." are to the administrative record in this matter.

Law Judge William M. Weir ("the ALJ"). Tr. 46-66. On June 23, 2015, the ALJ issued a decision finding that Cutre was not disabled within the meaning of the Act. Tr. 10-21. On December 13, 2016, the Appeals Council denied Cutre's request for review. Tr. 1-4. Thereafter, Cutre commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

**LEGAL STANDARD**

**I. District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II. Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Cutre's claim for benefits under the process described above. At step one, the ALJ found that Cutre had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Cutre has the following severe impairments: intellectual disability, lumbago, and cervicalgia. Tr. 12-13. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal a Listings impairment. Tr. 13-15.

Next, the ALJ determined that Cutre retained the RFC to perform medium work,[2] can operate a motor vehicle, and can occasionally have contact with the public, coworkers, and supervisors. Tr. 15-19. At step four, the ALJ relied on the VE's testimony and found that this RFC prevents Cutre from performing his past relevant work as a truck driver and van driver. Tr. 19. At step five, the ALJ relied on the VE's testimony to determine that Cutre can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 19-20. Specifically, the VE testified that Cutre could work as a packaging machine tender and warehouse worker. Tr. 20. Accordingly, the ALJ concluded that Cutre was not "disabled" under the Act. Tr. 20-21.

## II. Analysis

Cutre argues that remand is required because the ALJ created a gap in the record that he was obligated to develop when he rejected the only medical opinions as to Cutre's mental capacity. ECF No. 11 at 13-21. The Court agrees.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the SSA] determine[s] that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

The ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must develop a claimant's "complete medical history" for at least the 12 months before the month in which the claimant applied for benefits. 20 C.F.R. §§ 404.1512(b), 416.912(b). The ALJ must "make every reasonable effort" to help the claimant get reports from his medical sources. *Id.* Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

In the mental health context, the SSA promises to "make every reasonable effort to obtain all relevant and available medical evidence about [the claimant]'s mental impairment(s), including its history, and any records of mental status examination, psychological testing, and hospitalizations and treatment." *See* Listings § 12.00(D)(1)(a). When assessing a mental health impairment, the SSA recognizes the "[n]eed for longitudinal evidence" and that "it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish [the claimant's] impairment severity." *Id.* at § 12.00(D)(2).

Additionally, an ALJ cannot "assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Even though the Commissioner is empowered to make the RFC determination, "where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the

5

connection" herself. *Id.* (citation and alterations omitted); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.") (citations omitted).

Here, consultative examiner Kevin Duffy, Psy.D., and Edward P. O'Brien, III, M.D., provided the only medical opinions as to Cutre's mental ability to work.[3] Tr. 258-61, 266-70, 286-89. Dr. Duffy opined, among other things, that Cutre will have moderate difficulty maintaining attention and concentration and making appropriate decisions, and marked difficulty relating adequately with others and dealing appropriately with stress. Tr. 260-61, 268-69. The ALJ rejected this opinion because he found it "internally inconsistent." Tr. 17.

Dr. O'Brien indicated that Cutre cannot read or write well because he is "mentally handicapped." Tr. 287. He also opined that Cutre is moderately limited in his ability to carry out instructions; maintain attention and concentration; make simple decisions; interact appropriately with others; maintain socially appropriate behavior without exhibiting behavior extremes; and function in a work setting at a consistent pace. Tr. 289. Dr. O'Brien also opined that Cutre is very limited in his ability to understand and remember instructions. *Id.* Dr. O'Brien concluded that Cutre was permanently disabled due to autism and paranoid personality disorder. *Id.* The ALJ rejected Dr. O'Brien's opinion because he found it unsupported by the record. Tr. 18.

Regardless of whether the ALJ properly discounted these opinions, he created a gap in the record when he rejected the only medical opinions as to Cutre's mental ability to perform work-

---

[3] The record also contains an assessment from state agency review psychologist T. Bruni, who reviewed Cutre's record, but never examined him, and completed a Psychiatric Review Technique Evaluation and Mental RFC Assessment Tr. 72-81, 83-92. The ALJ's decision does not discuss this opinion and there is no evidence that he reviewed it. Tr. 15-19.

6

related functions on a regular and continuing basis.[4] *See Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's rejection of the treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original).

Despite the fact that the ALJ found Cutre's intellectual disability to be a severe impairment and rejected Dr. Duffy and Dr. O'Brien's opinions—the only opinions on Cutre's mental capacity to work—he somehow determined that Cutre can safely operate a motor vehicle and occasionally have contact with the public, coworkers, and supervisors. Tr. 29. It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this determination without relying on a medical opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.").

When an ALJ does not rely on a medical opinion to formulate the RFC, he must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Ford v. Colvin*, No. 12-CV-301A, 2013 WL 4718615, at *8 (W.D.N.Y. Sept. 3, 2013). Here, after rejecting the relevant medical opinions, the ALJ concluded that Cutre's alleged mental disability was inconsistent with his past work history, admitted level of functioning, and behavior at the hearing. Tr. 18-19. Although these factors are relevant to the ALJ's analysis, they lack medical support and do not address how Cutre's mental impairments affect his ability to work. The ALJ

---

[4] *See* S.S.R. 96-8p, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."); 20 C.F.R. §§ 404.1545(c), 416.945(c) (stating that the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing his mental capacity).

summarizes and cites some of the record medical evidence, but he does not tie that evidence to the mental demands of competitive work. Tr. 15-19.

Without a function-by-function assessment relating the medical evidence to the mental requirements of competitive work or reliance on a medical source's opinion as to Cutre's functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review. *See Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013) (noting that the ALJ is not required to perform an explicit function-by-function RFC analysis but that "[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review") (citation omitted).

For the reasons stated, the Court finds that the ALJ erred when he determined Cutre's RFC without a supporting medical opinion. Accordingly, remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 20, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court